**Zeleta M. SMALLS, Appellant,**

v.

**Donna E. SHALALA, Secretary of the United States Department of Health and Human Services, Appellee.**

No. 91–5335.

United States Court of Appeals, District of Columbia Circuit.

Argued March 2, 1993.

Decided July 2, 1993.

**414**

Bruce K. Billman, Stafford, VA, for appellant.

Claire M. Whitaker, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee. Robert L. Shapiro, Asst. U.S. Atty., Washington, DC, also entered an appearance, for appellee.

Before: MIKVA, Chief Judge, WALD and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

On January 12, 1988, Ms. Smalls filed a claim for disability insurance benefits under Title II of the Social Security Act ("Act") 42 U.S.C. § 401 *et seq.*, alleging that she had been disabled since November 30, 1983 because of phlebitis in her left leg. The Secretary of Health and Human Services applied the medical vocational guidelines ("grids") to Ms. Smalls' case and determined that although she was not physically capable of returning to her past "light work" as a bank teller, she was not disabled within the meaning of the Act because she could perform a full range of "sedentary work."

The Secretary's decision is not supported by substantial evidence. There was evidence in the record, including the plaintiff's own testimony, that the plaintiff could not lift

more than five pounds and had to keep her leg elevated even while sitting. The Secretary declined to address either of these claims despite the fact that "sedentary work," by definition, requires an individual to lift at least ten pounds, *see* 20 C.F.R. § 404.-1567(a); and postural limitations, such as the one alleged here, preclude the mechanical application of the grids to an individual's claim of disability. *Smith v. Bowen*, 826 F.2d 1120, 1122 (D.C.Cir.1987). Because the Secretary failed to address either of these crucial issues, this case must be remanded to the Secretary for a proper determination of whether Ms. Smalls is, in fact, capable of "sedentary work."

## I.

### A. *Medical History*

On November 30, 1983, Ms. Smalls left her job as a bank teller because she was suffering from severe pain in her left knee which made it impossible for her to perform her required duties. Since that time, Ms. Smalls has been examined and treated by several physicians recommended by her family doctor, Dr. Jonathan McCone, as well as numerous physicians recommended by the Secretary.

Her medical history since 1983 is documented in over 150 pages of medical reports. These reports reveal that Ms. Smalls initially suffered from a tear of the lateral meniscus of her left knee and that her condition worsened following arthroscopic surgery. Less than a week after her surgery was completed, her complaints of pain were so severe that she was readmitted to the hospital for further testing. A venogram indicated that she had developed complete thrombosis of the deep venous system from her lower leg to mid thigh, and two irregular clots, one in the deep femoral vein. Ms. Smalls was treated with anticoagulant drugs in the hospital and discharged approximately three weeks later. Dr. McCone advised Ms. Smalls to attend physical therapy classes and take aspirin regularly because of its blood-thinning qualities.

Between 1985 and 1987, Ms. Smalls continued to receive treatment from a number of physicians, including Dr. McCone. The medical reports from these examinations indicate that the pain and swelling in Ms. Smalls' left leg did not subside, and that she began to experience numbness in her left toes and left foot, as well as lower back pain caused by her altered gait. Ms. Smalls attempted to control her condition through regular elevation of her left leg, support hosiery and whirlpool treatment.

At the request of the Secretary, yet another physician examined Ms. Smalls in March 1988. This physician, a cardiovascular specialist, diagnosed Ms. Smalls as suffering from post-phlebitic syndrome. While there was no evidence of peripheral arterial disease, he noted that Ms. Smalls walked with a marked limp favoring her left leg, and that her left leg was significantly larger than her right, with tenderness to palpation.

By July 1988, Dr. McCone determined that Ms. Smalls was totally disabled. He based his conclusion primarily on her inability to sit or stand for prolonged periods of time or lift objects weighing more than 3–5 pounds. Dr. McCone also found that Ms. Smalls could walk only with a cane, and still needed to keep her leg elevated on a regular basis. In early 1989, Dr. McCone referred Ms. Smalls to Dr. Halifax King, a cardiovascular surgeon, for an additional diagnosis. Dr. King found good pulses in both her legs but confirmed that she had post-phlebitic syndrome. He suggested that her condition could be controlled if she avoided prolonged standing, wore support stockings, and kept her legs elevated when "recumbent."

On January 12, 1988, Ms. Smalls filed a claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Ms. Smalls alleged that she had been disabled since November 1983 and unable to continue working as a bank teller as a result of her medical problems. She explained that her disability was due to a combination of circulatory, orthopaedic, and neurological problems which produced painful swelling in her left leg as well as pain in her lower back and upper extremities.

A hearing was held before an Administrative Law Judge ("ALJ") on January 31, 1989. Ms. Smalls testified that the problems with

her left leg began after her knee surgery in 1983, and that she suffers from pulsating, toothache-like pain in her left leg and foot. She stated that she cannot sit comfortably for more than 30 to 45 minutes at a time, and that she cannot lift more than five pounds without trouble. Ms. Smalls also testified that she must keep her leg elevated for most of the day, but is able to do some chores around the house and occasional grocery shopping. She explained that when she does walk, she uses a cane.

### B. *Administrative Decision*

Under the regulations promulgated by the Secretary, a claimant seeking disability benefits under the Act bears the burden of establishing that she is incapable of performing her past relevant work due to a medically determinable physical or mental impairment. *Brown v. Bowen,* 794 F.2d 703, 706 (D.C.Cir. 1986). If the claimant succeeds in carrying this burden, the Secretary is then required to show that the claimant is capable of performing gainful work based upon her age, education, work experience, and residual functioning capacity. 20 C.F.R. §§ 404.1520(f), 416.920(f).

When appropriate, the Secretary may employ the medical-vocational guidelines ("grids") to determine whether there are available jobs in the national economy which the claimant is capable of performing given her vocational profile. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2. The grids were promulgated by the Secretary to provide an efficient means of resolving often difficult questions regarding the labor market. However, the grids may not be applied in all cases. The grids may be used "only when they describe a claimant's abilities and limitations accurately." *Heckler v. Campbell,* 461 U.S. 458, 467–68, 103 S.Ct. 1952, 1957–58, 76 L.Ed.2d 66 (1983). "If an individual's capabilities are not described accurately by a rule [in the grids] the regulations make clear that the individual's particular limitations must be considered." *Id.*

The grids do not take into account nonexertional impairments such as pain or postural limitations. Thus, the Secretary may not rely on the grids to the extent that pain or postural limitations reduce the claimant's "ability to perform jobs of which she is exertionally capable." *Smith v. Bowen,* 826 F.2d 1120, 1122 (D.C.Cir.1987). Application of the grids where an individual suffers from a pain or postural limitation not accounted for by the grids could lead to an inaccurate finding that jobs exist in the national economy that the claimant is capable of performing.

In this case, the ALJ acknowledged that Ms. Smalls met her burden of establishing that she was no longer capable of performing her past "light work" as a bank teller. *See* 20 C.F.R. § 404.1567(b) ("Light work ... involves lifting no more than 20 pounds at a time [and] ... a good deal of sitting or standing"). He also found her complaints of pain to be credible, but only to the extent she was rendered incapable of performing "light work." According to the ALJ, "the objective medical evidence d[id] not document the existence of any severe underlying problem" which would prevent her from performing "sedentary work" as defined in the regulations. *See* 20 C.F.R. § 404.1567(a) ("sedentary work" involves lifting "no more than 10 pounds" as well as "a certain amount of walking and standing").

At this point, the ALJ applied Rule 201.21 of the grids to Ms. Smalls' case. Rule 201.21 applies to a "younger individual" (45–49 years) with a high school education or more and past skilled or semi-skilled work experience with no transferable skills. The ALJ ruled that Ms. Smalls was not disabled because, according to Rule 201.21, there are "sedentary" jobs in sufficient numbers in the national economy which match her vocational profile. The Appeals Council declined to review the decision of the ALJ, making the ALJ's decision the final, appealable decision of the Secretary.

Having exhausted her administrative remedies, Ms. Smalls sought judicial review in the district court. On August 30, 1991, the district court issued a memorandum opinion and order granting the Secretary's motion for judgment of affirmance. Ms. Smalls now appeals from the district court's decision.

## II.

Our task is to determine, after searching the entire record, whether the Secretary's decision to deny Ms. Smalls' disability insurance benefits is supported by substantial evidence. 42 U.S.C. § 405(g). We determine that the Secretary's decision cannot stand. The Secretary failed to make two findings of material fact which are essential to a proper finding of nondisability. *See Cunningham v. Heckler,* 764 F.2d 911, 914 n. 4 (D.C.Cir.1985) (quoting *Francis v. Heckler,* 749 F.2d 1562, 1566 (11th Cir.1985) (a finding that an individual is not disabled "requires consideration of 'all the relevant facts in the case' ").

■ To begin with, it is clearly stated in the Secretary's regulations that an individual must be able to lift up to 10 pounds to be qualified for "sedentary work." *See* 20 C.F.R. § 404.1567(a). Both Ms. Smalls and Dr. McCone indicated that Ms. Smalls could only lift up to 5 pounds without trouble, and there is no evidence in the record which contradicts this allegation. Nevertheless, the ALJ summarily concluded that Ms. Smalls was capable of sedentary work, without addressing the requirements for sedentary work or the testimony of Ms. Smalls.

Whether or not Ms. Smalls could actually lift up to 10 pounds is no mere detail. As stated in the regulations, sedentary work "involves lifting no more than 10 pounds and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Ms. Smalls testified that she could not lift more than 5 pounds without difficulty and could walk only with a cane. If this was true, she was plainly not fit for sedentary work. While the ALJ may have had some good reason for disbelieving Ms. Smalls' testimony regarding her strength, it is certainly not apparent from the record before us. In any event, there was no evidence to contradict Ms. Smalls' claim. Accordingly, we conclude that substantial evidence does not exist for the Secretary's conclusion that Ms. Smalls was capable of sedentary work.

■ Ms. Smalls also points out that the Secretary applied the grids to her case without addressing her alleged postural limita-

tion. As noted previously, the Secretary is not free to apply the grids in every case. If a claimant suffers from nonexertional limitations that could limit the claimant's ability to perform jobs of which she would otherwise be capable, mechanical application of the grids is inappropriate. *Smith,* 826 F.2d at 1122.

Ms. Smalls testified at the hearing that it was necessary for her to keep her leg elevated for most of the day, even while sitting. This testimony was substantially corroborated by Dr. McCone, who repeatedly noted that Ms. Smalls needed to keep her leg elevated regularly. Despite the obvious relevance of this evidence, the Secretary declined to consider (on the record at least) whether Ms. Smalls' alleged postural limitation might reduce her ability to perform sedentary work as defined in the regulations. Without so much as a mention of her alleged postural limitation, the Secretary perfunctorily applied the grids to her case.

On appeal, the Secretary attempts to defend this error by asserting what is obvious: the mere allegation of a non-exertional impairment does not automatically preclude application of the grids. The question here, however, is whether the Secretary's decision to reject Ms. Smalls' testimony and apply the grids—despite her allegation of a serious postural limitation—is supported by substantial evidence. The Secretary's failure to even acknowledge that her alleged postural limitation could preclude application of the grids makes this task particularly difficult. Of course, it could be argued that the ALJ implicitly rejected Ms. Smalls' claim of a postural limitation by ruling that her complaints of pain were not credible to the extent that they were inconsistent with sedentary work. Since Ms. Smalls' need to raise her leg was associated with the pain and swelling she claimed to experience, it is at least conceivable that the ALJ believed he was rejecting her alleged postural limitation by finding her complaints of disabling pain incredible. This is just speculation, though, and too weak a reed to support the Secretary's decision.

The Secretary also points out that the ALJ could have been persuaded by the fact that Dr. King, a cardiovascular surgeon who ex-

amined Ms. Smalls, stated in a letter to Dr. McCone that Ms. Smalls could control the swelling in her left leg if she elevated it when "recumbent." The Secretary suggests that this statement provides substantial support for the Secretary's implicit· conclusion that Ms. Smalls did not need to keep her leg elevated for most of the day.

We are not persuaded that Dr. King's statement suffices to rebut the testimony of Ms. Smalls, which was substantially corroborated by the notes of Dr. McCone. The ALJ did not specifically credit Dr. King's finding or explain his bases for rejecting Ms. Smalls' testimony and Dr. McCone's notes. We are mindful of the fact that the opinion of a treating physician, like Dr. McCone, is ordinarily entitled to considerable weight. *Simms v. Sullivan,* 877 F.2d 1047, 1050 (D.C.Cir.1989). While the Secretary was not bound by Dr. McCone's opinion of Ms. Smalls' condition, and could even reject it if there was a lack of clinical data supporting it, *see Cunningham,* 764 F.2d at 918, the Secretary does not appear to have done so. Instead, the Secretary plowed ahead and applied the grids to Ms. Smalls' case without even addressing the postural limitation alleged. Under these circumstances, we are hard pressed to conclude that the Secretary's decision to apply the grids to Ms. Smalls' case is supported by substantial evidence.

### III.

Although we remand this case to the Secretary for a proper determination of whether Ms. Smalls is capable of sedentary work, it is important to note that certain of Ms. Smalls' claims are not valid. First, Ms. Smalls argues that the Secretary applied a wrong legal standard by "erroneously requiring objective evidence as to the degree of her pain."

■ Section 3 of the Social Security Disability Reform Act of 1984, 42 U.S.C. § 423(d)(5)(A), establishes a statutory standard for evaluating pain. The statute plainly states:

> there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impair-

ment ... which would reasonably be expected to produce the pain alleged.

*Id.* While it is true that the statute does not require medical evidence of pain itself, the statute does require "objective medical evidence of an *underlying impairment which could cause such pain.*" *Brown v. Bowen,* 794 F.2d 703, 706 n. 4 (D.C.Cir.1986) (emphasis in original). As we stated in *Brown,* "it is well within the ALJ's province to consider whatever medical evidence of pain or other symptoms exists, as well as [the claimant's] statements and those of her physicians." *Id.* at 706. *See also, Edwards v. Sullivan,* 985 F.2d 334 (7th Cir.1993) (claimant alleging disability caused by post-phlebitic pain syndrome required to produce medical evidence of an underlying impairment which would cause disabling pain). Thus, although the Secretary failed to properly consider Ms. Smalls' alleged postural limitation before applying the grids, the standard imposed upon Ms. Smalls with respect to her alleged pain limitation was perfectly legitimate.

■ Second, Ms. Smalls argues that her earlier application for disability benefits should be reopened because the 1984 decision rendered in that case was "plainly wrong." Ms. Smalls' request to reopen her earlier application cannot be granted because it is time-barred. Her previous application was filed on March 2, 1984, and her claim was denied on initial determination on May 9, 1984. Under the Secretary's regulations, the latest date on which her claim could have been reopened (assuming, of course, that she could show good cause) is May 9, 1988. 20 C.F.R. § 404.988. Ms. Smalls did not request reopening until June 2, 1989. Therefore, reopening of Ms. Smalls' previous claim for benefits is prohibited, and our reversal and remand applies only to the decision rendered by the Secretary regarding Ms. Smalls' application for benefits filed on January 12, 1988.

*Reversed and remanded.*