53 F.3d 329
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 John RICE, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 94-2001.
 United States Court of Appeals, Fourth Circuit.
 Submitted April 11, 1995.
Decided May 1, 1995.
 
 Before WIDENER and WILKINS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 John Rice appeals the district court's order denying him disability benefits. The district court found that substantial evidence supported the final decision of the Secretary of Health and Human Services (the Secretary) that Rice was not disabled. We agree and affirm.
 
 
 2
 Rice was twenty-one years old at the time the Secretary ruled on his application. He has a sixth grade education, and no significant work experience or job training. Medical evidence corroborates Rice's claim that he suffers from amblyopia[1] of the right eye, mitral valve prolapse,[2] and chronic obstructive pulmonary disease with asthma. All three of these conditions were diagnosed before Rice reached adulthood.
 
 
 3
 Rice filed a claim for disability benefits on November 6, 1991. Pursuant to the Supreme Court's decision in Sullivan v. Zebley, 493 U.S. 521 (1990), Rice's application was given a protective filing date of April 4, 1984, when Rice was twelve years old. He alleged that a combination of heart damage, asthma, headaches, chest pain, back problems, and poor vision in his right eye made him unable to work.
 
 
 4
 After a hearing in which Rice was represented by counsel, the administrative law judge (ALJ) entered an order denying Rice benefits. The ALJ held that Rice did not have impairments as a child which were of "comparable severity to an impairment or combination of impairments that would disable an adult." 20 C.F.R. Sec. 416.924(a) (1994). He found further that, as an adult, Rice retained the residual functional capacity for light level work. Based upon the testimony of a vocational expert, the ALJ concluded that Rice was not disabled under the applicable medical-vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2 (1994).
 
 
 5
 The Appeals Council refused Rice's Request for Review, making the ALJ's decision final. Rice then filed suit in the Southern District of West Virginia. Pursuant to 28 U.S.C. Sec. 636(c)(3) (1988), the case was referred to a magistrate judge, who entered an order granting summary judgment to the Secretary, based upon a finding that substantial evidence supported the Secretary's decision. Rice appealed.
 
 
 6
 Rice raises three issues on appeal. First, Rice asserts that the Secretary failed to develop the record adequately. Next, he claims that the Secretary's decision is not supported by substantial evidence in the record. Finally, Rice objects to the hypothetical posed by the ALJ to the expert vocational witness, who testified that an individual with the impairments described in the hypothetical could perform several jobs plentiful in both the state and national economy.
 
 I. Development of the Record
 
 7
 Rice asserts that the Secretary failed to develop the record regarding his alleged disability from the age of twelve to the age of eighteen. Rice cites "numerous references to hospitalizations, doctor's reports and visits," and evidence that he was placed in special education classes while in elementary school in Tennessee, which he asserts the ALJ failed to investigate.
 
 
 8
 In addition, Rice notes that he was given a protective filing date of April 4, 1984, on his November 6, 1991, application. Rice alleges that the protective filing date demonstrates that a previous application was filed with the Secretary when Rice was twelve years old. He asserts that the prior application should still be on file, and should contain "at least an initial application[ ], initial denial, and any medical evidence gathered or generated therefrom." Rice faults the Secretary for not including this information in the record or collecting equivalent information if the prior file was lost.
 
 
 9
 We find that the existing record was sufficiently developed to allow the ALJ to reach a reasoned decision. Although the ALJ has a duty to fully and fairly develop the record, Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir.1986), he is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir.1994). Rice bore the burden of establishing a prima facie entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir.1981); 42 U.S.C.A. Sec. 423(d)(5)(A) (West 1994) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.") Similarly, he "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1057 (4th Cir.1976).
 
 
 10
 The record contains Rice's medical and school records from 1983 and 1984. Rice's complaint that the ALJ ignored references to hospitalizations and doctor's visits is contradicted by the ALJ's decision, which included findings supported by medical records from the relevant time period that Rice (1) suffered chest pain due to a diagnosed mitral valve prolapse; (2) experienced asthma-related breathing problems for which he received medication in 1983 and 1984; (3) was diagnosed with amblyopia of the right eye, and retained only monocular vision. The ALJ concluded that, although Rice had chronic illnesses during the relevant period of minority, his functional limitations were not "of comparable severity to an impairment which would disable an adult."
 
 
 11
 Rice's application and school records disclose that he was not assigned to special education classes in Tennessee. Although Rice did not complete the seventh grade, his records reflect that he was excessively absent from school. Rice testified that he chose to quit school. Rice also testified that he could read, but was limited by his poor eyesight and the accompanying headaches. Dr. Guberman found no evidence that Rice suffered from psychiatric problems and reported that Rice's intellectual functioning and mental status appeared normal.
 
 
 12
 We find that the record was fully and fairly developed. See Cook, 783 F.2d at 1173. The ALJ expanded the record substantially, requesting a comprehensive medical examination of Rice by Guberman. As mentioned, the ALJ thoroughly questioned Rice about his medical problems, and their effect on his day-to-day living. If there were some critical medical record, which could demonstrate that Rice suffered a childhood condition of disabling severity that was not reflected in the evidence, it was the responsibility of Rice's attorney to bring it to the ALJ's attention.
 
 II. Substantial Evidence
 
 13
 Under 42 U.S.C.A. Sec. 405(g) (West Supp.1994), this Court must uphold the Secretary's decision if it is supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). We have explained the substantial evidence standard as:
 
 
 14
 evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."
 
 
 15
 Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966) (citation omitted)). It is the ALJ's role to find facts and resolve conflicts in the evidence. King v. Califano, 599 F.2d 597, 599 (4th Cir.1979).
 
 A. Adult disability
 
 16
 The steps for analyzing Rice's adult disability claim are set forth in 20 C.F.R. Secs. 404.1520, 416.920 (1994). The ALJ must first assess whether Rice is engaged in substantial gainful activity. 20 C.F.R. Secs. 404.1520(b), 416.920(b). Because Rice was not engaged in any gainful activity, the ALJ then must require whether Rice is severely impaired such that his condition "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. Sec. 404.1520(c).
 
 
 17
 If the ALJ finds a severe impairment, he proceeds to steps three, four, and five of the analysis. The ALJ next inquires whether Rice's impairments meet or equal those listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. If so, the ALJ enters a finding of disability; if not, the inquiry continues. In steps four and five, the ALJ inquires whether Rice retains the ability to work. Rice's ability to perform gainful work is determined in light of his residual functional capacity, age, education, and work experience. 20 C.F.R. Secs. 404.1520(d), (f), 416.920(d)-.920(f).
 
 
 18
 Although the ALJ found that Rice's heart problem (mitral valve prolapse with occasional chest pain), asthma, and vision were severe impairments, he also determined that Rice's "cut off" little finger, headaches, and scoliosis[3] were not severe impairments. We find these conclusions to be supported by substantial evidence.
 
 
 19
 The medical evidence shows that Rice's grip and manipulative ability were adequate and that Rice did not complain of his finger to Guberman. Although Rice listed headaches in his application for disability, he did not mention them to Guberman. There is no objective medical evidence that Rice's headaches are of sufficient frequency and intensity to be considered severe. The ALJ determined that Rice's testimony concerning his headaches was not fully credible, and we will not disturb this finding on appeal. Similarly, there is no medical evidence suggesting that Rice's mild scoliosis is a severe limitation. Guberman found the range of motion of the spine to be normal, with no evidence of leg shortening. Range of flexion of Rice's hips was also normal.
 
 
 20
 Taking Rice's severe impairments into account, the ALJ found that Rice retained an exertional capacity for light work, and concluded that "there are a significant number of jobs in the national and regional economies which [Rice] could perform." Relying on the testimony of the vocational expert, the ALJ found that Rice could work as a custodian, private household cleaner, bottling line attendant, parking lot attendant, assembly worker, and stationary security guard.
 
 
 21
 Substantial evidence supports the ALJ's finding that Rice was able to perform light work. Rice testified that he worked for the Wayne County News lifting bundles of fifty newspapers in 1990 and 1991. He worked between twelve and fifteen hours a week before he was laid off as part of a staff reduction. Rice also testified that he could lift a twenty-five pound bag of dog food. Rice stated that his daily activities include dusting, cooking, washing dishes, and sweeping.
 
 
 22
 Guberman reported that Rice could perform "mild exertion" without shortness of breath. Guberman recorded Rice's pulse as regular and found no evidence of congestive heart failure. Rice's chest X-ray showed that his chest cage is normal, that his costophrenic sinuses are well delineated, that his lung fields are clear, and that his heart and aorta appear normal. Guberman concluded that Rice could: (1) lift fifty pounds occasionally; (2) lift twenty-five pounds frequently; (3) stand or walk for six hours in an eight hour day; (4) sit for six hours in an eight hour day; (5) push and pull an unlimited amount.
 
 
 23
 Dr. Terry performed an eye examination on Rice on December 19, 1991. Terry found amblyopia of the right eye. However, Terry reported that Rice retained visual acuity in his left eye of 20/40 without correction, and 20/50 with correction. Noting that Rice's vision worsened with correction, Terry suggested that this symptom was malingering.
 
 
 24
 The ALJ also considered Rice's testimony concerning his symptoms, pain, and physical limitations. See 20 C.F.R. Sec. 416.929 (1994). After comparing Rice's subjective account of his pain and symptoms with the medical evidence, the ALJ concluded that Rice's testimony at the hearing was not fully credible. See 20 C.F.R. Sec. 416.929(c)(4). Giving "great weight" to the ALJ's credibility determination, Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984), we find that a reasonable factfinder could conclude that Rice's medical history undermines his claim that he experiences constant debilitating symptoms--chest pain, backaches, and headaches--which prevent him from working.
 
 
 25
 In determining the types of employment which Rice could perform, the ALJ relied upon the testimony of the vocational expert, a rehabilitation specialist with nine years of experience in job placement for persons with disabilities. The ALJ asked the vocational expert to assume that an individual was twenty-one years old, with a seventh grade education, and without training or work experience; had exertional impairments which would limit him to light work; was unable to work around excessive dust, fumes, gasses, high humidity, or extremes of heat and cold; was unable to perform work requiring fine visual acuity; was required to avoid unprotected heights and dangerous machinery; and was unable to operate a moving vehicle. The vocational expert stated that such an individual could perform sixty percent of the light work job categories, and fifty percent of the sedentary job categories, listed under the grid rules.
 
 
 26
 The vocational expert then identified several specific jobs plentiful in the regional and national economy which such a person could perform, including light custodial work, private household cleaning, canning line work, parking lot attendance, assembly work, and stationary security work. In light of this testimony, we find that substantial evidence supports the ALJ's finding that Rice was not disabled.
 
 B. Childhood disability
 
 27
 The ALJ evaluated Rice's development and functioning from age twelve to age sixteen and from age sixteen to age eighteen, and found no disability. See 20 C.F.R. Sec. 416.924a(b)(3) (1994). The ALJ conducted an individualized functional assessment, and found no evidence of any limitation in cognitive development, communicative development/functioning, social development/functioning, behavioral/personal development/functioning, or concentration, persistence, or pace. See 20 C.F.R. Sec. 416.924d (1994) The ALJ found that Rice had moderate limitations in motor development/functioning due to his heart murmur, asthma, and monocular vision. The ALJ concluded that Rice did not suffer limitations in these functional areas which were comparable to an adult disability. See 20 C.F.R. Sec. 416.924(a), (f) (1994). We find this conclusion supported by the record.
 
 
 28
 Rice's medical records from 1983 and 1984 show that an he suffered from mitral valve prolapse as early as 1983. A November 1983 record shows a history of asthma, an inability to see from his right eye, the heart murmur, and a history of high fevers. Rice was seen in February 1984 for a croupy cough and fever. An increased expiratory phase in his lungs was noted, as was his heart murmur. Rice was seen for asthma in April 1984, and the doctor noted that Rice had some coughing and scattered wheezes, in addition to his asthma, mitral valve prolapse, and amblyopia. Rice was seen for a headache in September 1983, diagnosed as having allergies or a sinus infection, and treated with antibiotics and a decongestant. Rice told the examining physician that he had similar headaches once a year, and that decongestants helped to relieve them.
 
 
 29
 As mentioned above, Rice's school records reveal that he attended regular classes, was frequently absent, and quit school in the seventh grade. Rice was not placed in special education at any time. Rice testified that he could read. The ALJ noted from his personal observations that Rice's speech and hearing were normal. Guberman observed that Rice's intellectual functioning appeared normal and Rice's neurological exam was normal. Guberman found all of Rice's sensory modalities "well preserved," with normal Achilles, patellar, biceps and triceps tendon reflexes. He found no muscle weakness or atrophy.
 
 
 30
 We find no evidence suggesting that Rice suffered a disabling functional impairment as a child and conclude that the evidence is sufficient to uphold the ALJ's determination.
 
 III. ALJ's Hypothetical
 
 31
 Rice's counsel on appeal, who was not counsel in the proceedings below, asks this Court to consider an issue not raised before the magistrate judge or the ALJ: whether the ALJ posed a proper hypothetical to the vocational expert, setting forth "precisely" Rice's impairments and limitations. Hicks v. Califano, 600 F.2d 1048, 1051 (4th Cir.1979). Because this issue was not raised below, we decline to hear it on appeal. See Singleton v. Wulff, 428 U.S. 106, 120 (1976); Williams v. Shalala, 997 F.2d 1494, 1500 (D.C.Cir.1993).
 
 
 32
 We affirm the district court's order granting summary judgment to the Secretary. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 "Unilateral decreased visual acuity without detectable organic disease of the eye." STEDMAN'S MEDICAL DICTIONARY 53 (25th ed.1990)
 
 
 [2]
 "[E]xcessive retrograde movement of the mitral valve into the left atrium during left ventricular systole, often allowing mitral regurgitation." STEDMAN'S MEDICAL DICTIONARY 1266
 
 
 [3]
 Guberman found that Rice had mild scoliosis. Rice was apparently unaware of this condition prior to Guberman's examination