# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MELVIN JONES, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 08-1591 (RMC) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Melvin Jones brought this action for judicial review of a decision of the Social Security Commissioner, denying his application for supplemental security income. Mr. Jones has moved for a judgment of reversal or, in the alternative, for remand for a new administrative hearing. The government has moved for a judgment of affirmance of the denial of benefits. As explained below, the motion for judgment of reversal or remand will be denied , and the motion for judgment of affirmance will be granted.

## I. FACTS

Mr. Jones applied for supplemental security income on May 31, 2005, alleging that he had been unable to work since February 1, 2004, due to congestive heart failure, lung complications, gout, high blood pressure, and an eating disorder. AR at 72. The Commissioner initially denied Mr. Jones's claim on November 16, 2005 and again on reconsideration on May 25, 2007. Subsequently, Mr. Jones requested review and a hearing by an Administrative Law Judge

("ALJ"). The request was granted and a hearing was held.[1] The issue before the ALJ was whether Mr. Jones was disabled under the Social Security Act ("SSA" or "Act"), 42 U.S.C. §§ 401-434.[2]

The SSA defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner employs a five-step sequential process in determining whether a claimant is disabled under the Act. 20 C.F.R. § 416.920. The ALJ must first determine whether the claimant is working or performing substantial gainful activity. *Id*. § 416.920(a)(i) & (b). If not, the ALJ must then determine whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id*. § 416.920(c); *see also id*. § 416.920(a)(ii). If the claimant has a severe impairment or combination of impairments, the ALJ must then determine whether the impairment meets or is equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* §§ 416.920(a)(iii) & (d), 416.925 & 416.926. If not, the ALJ must determine the claimant's residual functional capacity, and whether this capacity permits the claimant to perform her past relevant work. *Id.* § 416.920(e) & (f); *see also id*. § 416.960. If the claimant cannot perform her past relevant work, the ALJ must determine whether the claimant can perform any other work in the national economy, taking into account his residual functional capacity, age, education and work experience. *Id*.

---

[1] Mr. Jones was represented by counsel at the hearing.

[2] Mr. Jones filed previous applications for disability income in September of 1990 and May of 2004. These applications were denied on initial review and Mr. Jones did not pursue them. AR at 15.

§ 416.920(g) & 416.960(c).

In a decision dated March 3, 2008, the ALJ found that Mr. Jones was not disabled within the meaning of the SSA and denied his application for benefits. AR at 15-26. The ALJ considered Mr. Jones's complete medical history. *Id*. at 15. The critical portion of that medical history began when Mr. Jones was admitted into Providence Hospital on March 25, 2004, due to shortness of breath. *Id*. at 285. The medical record indicates that he had normal motor activity and range of motion. *Id*. at 286. He walked easily with a normal gait and good balance. The doctor administered Albuterol and a nebulizer treatment, and prescribed Prednisone; Mr. Jones's breathing improved. *Id*.

Then, on May 20, 2004, Mr. Jones returned to Providence with shortness of breath. *Id*. at 157. Again, he had normal gait and motor activity. *Id*. at 158. The physician recommended cardiac monitoring, but Mr. Jones left against medical advice. *Id*. at 154. Five days later, on May 25, 2004, Mr. Jones reported to the hospital with swollen and painful feet. *Id*. at 275. Yet again, his motor activity and gait were normal. *Id*. at 276. He was diagnosed with gout, given medication, and discharged. *Id*. at 278. On June 7, 2004, Mr. Jones saw his own doctor, Dr. Ashwini Sardana who confirmed the gout diagnosis and also diagnosed congestive heart failure and hypertension. *Id*. at 325.

On August 5, 2004, Dr. M.V. Kumar, a consulting physician, reviewed Mr. Jones's medical records to determine Mr. Jones's functional abilities. *Id*. at 183-84. Dr. Kumar found that Mr. Jones's gout and emphysema were not severe, but his congestive heart failure and hypertension were severe. Even so, Dr. Kumar found that these conditions did not meet the Listings. *Id*.

On May 27, 2005, Mr. Jones had another appointment with Dr. Sardana. Dr. Sardana

refilled certain prescriptions and noted that Mr. Jones's congestive heart failure was stable with medication. *Id*. at 322. Another consulting physician, Dr. Jerome Putnam, examined Mr. Jones on July 27, 2005. Dr. Putnam diagnosed congestive cardiomyopathy with a history of congestive heart failure; however, he noted no evidence of active cardiopulmonary disease and no significant evidence of obstructive airways disease. *Id*. at 211.

On February 20, 2006, Mr. Jones went to Washington Hospital Center for low back pain and underwent an MRI. The results showed degenerative disc changes. *Id*. at 234. On March 31, 2006, Mr. Jones saw Dr. Sardana, reporting a recent accident and lower back pain. Dr. Sardana renewed Mr. Jones's prescriptions. *Id*. at 311-12.

On August 5, 2006, Mr. Jones reported to Providence Hospital after a car accident, complaining of pain in the neck and left shoulder. *Id*. at 265-67. His gait and posture were normal. He was diagnosed with left shoulder and back strain and discharged. *Id*. Dr. Peter Moskovitz saw Mr. Jones on August 15, 2006. He had performed surgery on Mr. Jones when Mr. Jones was a child to treat knee deformities. Dr. Moskovitz noted asymmetrical lumbar posture and mild leg length discrepancy. *Id*. at 244. His impression was spinal stenosis, *id*., but a MRI did not reveal any significant stenosis. *Id*. at 367. The MRI showed a narrowing of the L1-2 and L4-5 disc spaces and dehydration, and mild bulging of the discs. *Id*.

On March 1, 2007, Dr. Kumar completed a residual functional capacity assessment, and determined that Mr. Jones could stand two hours and sit six hours in an eight hour work day. *Id*. at 329. On March 22, 2007, Dr. Rafael Lopez, a consulting physician, examined Mr. Jones. Dr. Lopez noted that Mr. Jones was able to stand erect and walk with a normal gait and he was able to heel-and-toe walk without difficulty. *Id*. at 337. He did not need an assistive device for ambulation.

*Id*. Further, he did not have any limitation of range of motion of his spine, he had normal strength in his arms and legs, and he had full use of his hand and fingers. *Id*. at 338-39.

On May 4, 2007, Dr. Louis Decker, Ph.D., conducted a psychological exam. He found that Mr. Jones displayed intact cognitive functions and logical thought processes. *Id*. at 345. Dr. Decker conducted IQ tests and found that Mr. Jones was within the average range of intellectual functioning. *Id*. Mr. Jones reported to Dr. Decker that he prepared meals for himself and his grandfather and that he performed household chores and took care of his own personal needs. *Id*.

On January 8, 2008, Dr. Sardana evaluated Mr. Jones's functional abilities. He opined that Mr. Jones could stand or walk for two hours in an eight hour work day, but that he could only sit for four hours. *Id*. at 363-64. He concluded that Mr. Jones's emphysema "contributes to his frequent episodes of shortness of breath and that significantly hampers him in performing work related activities. He also has chronic back pain and gout which prevent him to go [sic] back to [a] full time job." *Id*. at 365.

In light of the record and the testimony at the administrative hearing, the ALJ made the following findings: Mr. Jones has not engaged in any substantial gainful activity since May 31, 2005, when he applied for disability benefits. *Id*. at 17. He was 41 at that time. *Id*. at 25. In the past, he worked as an installer of office cubicles, a mover, and a truck driver. *Id*. at 405. He has degenerative disc disease, lumbar spinal stenosis, congestive heart failure, cardiomyopathy, chronic obstructive pulmonary disease, emphysema, gout, obesity,[3] and a learning disorder. *Id*. at 17-18. These impairments do not meet or exceed the Listings. *Id*. at 18-19. Mr. Jones does not require the

---

[3] Mr. Jones testified that he is 5 feet 9 inches tall and weighs 220 pounds. AR at 21. An evaluating physician, Dr. Putnam, noted that in July of 2005, Mr. Jones was 5 feet 8 inches tall and 264 pounds. *Id*.

use of an assistive device for ambulation. *Id*. at 18. He has not attended physical therapy and no doctor has referred him for pain management due to his musculoskeletal complaints. Further, his emphysema and chronic obstructive pulmonary disease are manageable with medication. "Pulmonary function studies revealed a marked restrictive ventilatory defect, but no evidence of obstructive airways disease of consequence. The claimant had normal post bronchodilator values for FVC and FEV1. . . . In 2004, an EKG did not show any acute myocardial infarction and the claimant was treated with diuretics." *Id*. Also, Mr. Jones's learning disability is insufficiently severe to satisfy the Listings. *Id*. at 19. He has an IQ in the average range of intelligence, and he can read but not write. He is a high school graduate and has been employed in the past despite his learning disability. *Id*.

The ALJ concluded that Mr. Jones could perform sedentary work, that he could stand for two hours and sit for six hours during an eight hour work day:

> [T]he claimant has the residual functional capacity to perform sedentary work, except that the claimant can only lift five pounds frequently and ten pounds occasionally, can walk and stand at least two hours during an eight hour day, can sit for at least six hours during an eight hour day, pushing and pulling is limited in the left lower extremity, can occasionally climb stairs or ramps, can never climb ladders, can occasionally balance, bend, stoop, kneel, crouch, squat, and crawl, must avoid moderate exposure to extremes in temperatures, both hot and cold, must avoid concentrated exposure to wetness, must avoid moderate exposure to high humidity, must avoid all exposure to fumes, odors, dust, gases, poor ventilation, and hazards such as moving machinery and unprotected heights, and has moderate limitations in the ability to concentrate and maintain attention for extended periods, and keep up a pace due to pain, fatigue, the effects of medication, and emotional factors.

*Id*. at 19-20. A vocational expert testified that someone with the same limitations as Mr. Jones would be able to perform a sedentary job, such as clerical sorter (of which 70,000 jobs exist

nationally) and information clerk (of which 61,000 jobs exist nationally). *Id*. at 25-26.

Mr. Jones filed an administrative appeal, and the Appeals Council denied the appeal on July 23, 2008. *Id*. at 6. Mr. Jones now seeks a judgment of reversal or an order remanding for a new administrative hearing. The government moves for an order affirming the denial of benefits.

## II. STANDARD OF REVIEW

In reviewing a case under the SSA, the district court must defer to the decision of the ALJ if it is supported by substantial evidence and it is in accord with applicable law. 42 U.S.C. § 405(g); *see also Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987). "Substantial evidence" is evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This test "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003). Even though the Court must carefully scrutinize the entire record, it must not substitute its own judgment for that of the ALJ. *See Chevalier v. Shalala*, 874 F. Supp. 2, 3 (D.D.C. 1995).

## III. ANALYSIS

Mr. Jones argues that the ALJ erred by declining to give controlling weight to the January 8, 2008 report of his treating physician, Dr. Sardana. Under the treating physician rule, the ALJ must give substantial weight to the opinion of a claimant's treating physician. *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987). That is, the medical opinion of a treating physician is entitled to controlling weight if it is "not inconsistent with other substantial record evidence and [it is] well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Butler v. Barnhart*, 353 F.3d 992, 1003 (D.C. Cir. 2004). "[A]n ALJ who rejects a treating physician's

opinion must explain his reasons for doing so." *Smith v. Astrue*, 534 F. Supp. 2d 121, 131 (D.D.C. 2008).

In finding that Mr. Jones had the residual capacity to perform sedentary work, the ALJ did not grant controlling weight to the opinion of Dr. Sardana. Dr. Sardana opined that Mr. Jones could stand for two hours and sit for only four hours in an eight hour work day, thus making him unable to perform a full time job. AR at 364. The ALJ found that Mr. Jones was able to sit for six hours in an eight hour work day, based on the objective medical evidence in the record. AR at 19-20. There is nothing in Dr. Sardana's report or elsewhere in the medical record that supports his opinion that Mr. Jones could only sit for four hours in an eight hour work day. *Id*. at 23. Further, the ALJ found that while the medical record supports Mr. Jones's testimony that he suffered from various symptoms, Mr. Jones was not credible regarding the alleged intensity, persistence, or limiting effects of the symptoms. *Id*. at 21. Mr. Jones testified that he could only walk one-half a block, stand for two-three minutes, and sit for 15-20 minutes. *Id*.; *see also id*. at 408. Mr. Jones, however, is independent in his daily life — he took care of his own needs and his grandfather's needs, cooks, performs household chores, shops, and attends church services. *Id*. at 345, 400, 414-17. He continued to drive about once per week. *Id*. at 400. Mr. Jones also reported that he got up around 5:00 a.m. and went to bed between 9:00 and 11:00 p.m.; he likes watching movies, reading, and fishing. *Id*. at 345. As the ALJ noted, "these activities are not indicative of a person who is totally disabled, and show that he is able to function quite well doing the things he wants to do." *Id*. at 24.

It should also be noted that Mr. Jones's medical conditions were controlled with medication. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Hecker*, 785 F.2d 1163, 1166 (4th Cir. 1986). Dr. Sardana noted that Mr.

Jones's heart problems were stable with medication. AR at 322. Dr. Kumar wrote that Mr. Jones's gout was "under control after appropriate therapy." *Id.* at 336. And Dr. Kumar noted that the records of Mr. Jones's hospital treatment for breathing trouble in March 2004 and May 2005 indicate that he was given bronchodilator nebulizer therapy and discharged, without any intubation or hospitalization for emphysema. *Id.* at 183.

Mr. Jones argues that it was improper for the ALJ to credit the opinion of evaluating physician Dr. Lopez because Dr. Lopez erroneously stated that Mr. Jones had no leg deformities and that Mr. Jones could walk on his tiptoes. Dr. Moskovitz, the physician who performed surgery on Mr. Jones for a knee deformity when Mr. Jones was a child, noted mild leg length discrepancy. *See id.* at 244. Dr. Kumar noted surgical scars and "deformities." *Id.* at 185-92. *But see id.* at 183 (Dr. Kumar noted that Mr. Jones had no permanent joint deformity or impaired movement of any joints). The appearance of Mr. Jones's leg was not at issue here. What was critical was his mobility and functional capacity. The record is replete with notations that Mr. Jones had a normal gait and walked without any assistive devices. *See, e.g.*, AR at 158, 265-67, 276, 286 & 338-39. Further, Dr. Lopez's report did not indicate that Mr. Jones was able to walk on his tiptoes. The report stated that Mr. Jones was able to perform a heel-and-toe walk. *Id.* at 337.

Mr. Jones also contends that the ALJ failed to develop the record with respect to the treatment from Dr. Moskovitz, pointing to a March 19, 2009 report from Dr. Moskovitz. *See* Pl.'s Mot. for Reversal [Dkt. # 26], Ex. A (Mar. 19, 2009 report). However, Dr. Moskovitz did not offer a medical opinion; instead, he simply concluded that "Mr. Jones reports his experience of disability honestly" and that because of "injury, deformity, and instability of his lumbar spine" Mr. Jones was disabled. *See id.* The ALJ is not required to accept a doctor's statement that a claimant is disabled,

as the issue of whether a claimant is disabled is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e)(1). Moreover, even if the ALJ had this report before him at the time he made his decision, it would not change the fact that there is substantial evidence in the record to support the ALJ's conclusion of no disability. As explained above, Mr. Jones's medical conditions were controlled with medication, and Mr. Jones was able to do those things he wants to do, including taking care of himself and his grandfather.

Mr. Jones also alleges that the ALJ erred by failing to consider his daytime drowsiness due to medication. But the ALJ did consider Mr. Jones's drowsiness. The ALJ expressly asked the vocational expert to consider whether an individual with moderate levels of attention and concentration for extended periods due to the side effect of medication would be able to perform sedentary work. AR at 425. The vocational expert identified certain sedentary jobs that Mr. Jones could perform. *Id*. at 425-26.

Mr. Jones also contends that the ALJ improperly disregarded the effects of his "eating difficulties." Pl.'s Reply at 5. But there is nothing in the medical record to support Mr. Jones's claim that his "eating difficulties" impinged his ability to perform any substantial gainful activity.

Finally, Mr. Jones argues that the ALJ erred by finding that he was capable of only unskilled work and that the sedentary jobs available in the national economy that were identified by the vocational expert were semi-skilled jobs. This argument is based on the false premise that the ALJ found Mr. Jones was only capable of unskilled work. The ALJ did not make such a finding. He found that Mr. Jones was moderately limited in his ability to maintain attention for extended periods and to keep up a pace. AR at 20. Unskilled work is work that needs little or no judgment to perform simple tasks that can be learned on the job in a short period of time. 20 C.F.R.

§ 416.968(a). A "marked" restriction on concentration and ability to keep pace might be consistent with unskilled work. *See* 20 C.F.R. Part 404, Subpart P, Appx. 1, Section 12.00C(3). The record does not support an allegation that Mr. Jones had such a marked restriction on his abilities.

The Court has carefully scrutinized the entire record, and is precluded from substituting its own judgment for that of the ALJ. *See Chevalier*, 874 F. Supp. at 3. In sum, there is substantial evidence in the record that supports the ALJ's decision in this case, evidence that a reasonable mind might accept as adequate to support the ALJ's conclusion that Mr. Jones was not disabled under the SSA, 42 U.S.C. § 423(d)(1)(A). *See Richardson*, 402 U.S. at 401.

## IV. CONCLUSION

The Commissioner's motion for judgment of affirmance [Dkt. # 29] will be granted, and Mr. Jones's motion for judgment of reversal or remand [Dkt. # 26] will be denied. A memorializing Order accompanies this Memorandum Opinion.

Date: September 17, 2009                                    /s/
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge