# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 4, 2011          Decided August 5, 2011

No. 09-5414

MELVIN A. JONES,
APPELLANT

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01591)

———

*Jonathan K. Osborne*, student counsel, argued the cause as *amicus curiae* in support of the appellant. With him on the brief were *Steven H. Goldblatt*, appointed by the court, *Doug Keller*, Supervising Attorney, and *Amanda Boote Santella*, student counsel.

*Melvin Jones*, pro se, filed briefs.

*Fred E. Haynes*, Assistant U.S. Attorney, argued the cause for the appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence* and *Alan Burch*, Assistant U.S. Attorneys.

Before: GARLAND and BROWN, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Melvin Jones challenges a judgment of the district court affirming the Social Security Administration's denial of his application for disability benefits. Jones contends that an Administrative Law Judge did not properly apply the "treating physician rule" in evaluating his application, and further argues that new evidence has come to light that warrants a remand to the agency.  We agree with both contentions.

I

Jones suffers from a variety of health problems.  He has been diagnosed with degenerative disk disease, lumbar spinal stenosis, congestive heart failure, cardiomyopathy, chronic obstructive pulmonary disease, emphysema, and gout.  As a child, he underwent several surgeries, which created an asymmetry in the length of his legs.  In 2006, he was involved in a car accident that aggravated his pre-existing back problems. Jones engaged in manual labor for most of his life and held jobs moving furniture and office equipment.  He alleges that, by 2004, he was unable to perform the tasks required for those jobs -- including lifting and driving -- and could no longer work.

To qualify for disability benefits under Title XVI (Supplemental Security Income) of the Social Security Act, 42 U.S.C. § 1381 *et seq*., a claimant must establish that he is disabled.  *Id*. § 1381a.  The Act defines "disability" as the "[inability] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[,] . . . which has lasted or can be expected to last for

a continuous period of not less than 12 months." *Id*. § 1382c(a)(3)(A); *cf. id*. § 423(d)(1).  The Act further states that "[a]n individual shall be determined to be under a disability only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 1382c(a)(3)(B); *cf. id*. § 423(d)(2)(A).

The Social Security Administration (SSA) has established a five-step sequential process for assessing a claimant's eligibility for disability benefits.  In the first four steps, the claimant bears the burden of proof.  *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  At step one, the claimant must demonstrate that he is not engaged in "substantial gainful" work.  20 C.F.R. § 416.920(b).  At step two, he must establish that he has a "severe impairment" that "significantly limits [his] physical or mental ability to do basic work activities."  *Id.* § 416.920(c).  At step three, the claimant must show that he suffers from an impairment that meets or equals an impairment listed in the appendix to the SSA regulations.  If so, he is found to be disabled within the meaning of the Act, and the inquiry concludes.  *Id.* § 416.920(d).  If not, the inquiry proceeds to step four, which requires the claimant to show that he does not have the "residual functional capacity" to perform the requirements of his past relevant work.  *Id.* § 416.920(e), (f).  If he makes that showing, the claimant has carried his burden, and the burden then shifts to the Commissioner of Social Security to demonstrate, at step five, that the claimant is able to perform other work.  *Id.* § 416.912(g); *see also Butler*, 353 F.3d at 997.  At this stage, the Commissioner considers the claimant's residual functional capacity, age, education, and work experience to determine whether the claimant can make an adjustment to other work, *see* 20 C.F.R. § 416.920(a)(4)(v),

(g)(1), and must show that there are jobs in the national economy that the claimant can perform, *id.* § 416.912(g). If there are not, the claimant is disabled and eligible for benefits. *Id.* § 416.920(a)(4)(v).

Jones applied for supplemental security income disability benefits in May 2005. In the ensuing three years, he saw a number of doctors, including his treating physician, Dr. Ashwini Sardana. In 2008, after evaluating him on several occasions, Dr. Sardana completed a medical assessment, which noted that Jones suffered from numerous infirmities affecting his back, heart, and lungs. In assessing Jones' capacity for work, Sardana concluded that, while Jones could occasionally bend or balance, he could never stoop, crouch, crawl, or climb. Of greatest significance to this appeal, Sardana opined that Jones could stand for only two hours of an eight-hour work day and could sit for only four hours.

Following his car accident in 2006, Jones saw Dr. Peter Moskovitz, the orthopedic surgeon who had operated on his knee when he was a child. Dr. Moskovitz reported that Jones had progressive back and leg pain, left-sided sciatica, and degenerative disc changes. He recommended a comprehensive lumbar spine program.

In March 2007, Jones went to see Dr. Rafael Lopez, a physician to whom the SSA had referred him for a disability examination. Dr. Lopez's report stated that Jones had normal range of motion, and could squat, rise, and walk without difficulty. He opined that Jones had full ability to use his upper and lower extremities for work-related activities.

Jones' medical records were also reviewed by Drs. M.V. Kumar and Subramanian Srinivas as part of the disability-claims process. Based on the records, the doctors concluded that,

although Jones was impaired in his occupational functioning, he could sit for six hours in an eight-hour work day and could stand for two.

The SSA denied Jones' claim in November 2005. In May 2007, the agency denied Jones' petition for reconsideration. Jones requested a hearing before an Administrative Law Judge (ALJ), which was held in January 2008.

The ALJ's decision, issued in March 2008, followed the five-step analysis outlined above. ALJ Opinion (March 3, 2008) (J.A. 29-40). At step one, the ALJ determined that Jones had not engaged in gainful activity since May 31, 2005 -- the date of his application. At step two, he found that Jones had several severe impairments, including degenerative disc disease, lumbar spinal stenosis, congestive heart failure, chronic obstructive pulmonary disease, and emphysema. Although the ALJ concluded at step three that none of Jones' impairments met or equaled those listed in the regulatory appendix, he determined at step four that Jones was unable to perform any past relevant work.

Turning to step five, the ALJ found that Jones had the residual functional capacity to perform other work, albeit only sedentary work. In so finding, the ALJ rejected Dr. Sardana's opinion that Jones could not sit for more than four hours in an eight-hour day. ALJ Op. at 5-6. The ALJ said that, although "Dr. Sardana's report provides a basis for the finding of some limitations related to back pain, respiratory, and cardiovascular problems," the "report and the balance of the medical record do not rule out work within the scope of the residual functional capacity adopted here." *Id.* at 9. Based on the views of a vocational expert, the judge concluded that there were jobs in the national economy for a person of Jones' age and with his education, work experience, and residual functional capacity.

Accordingly, the ALJ concluded that Jones was not disabled within the meaning of the Social Security Act.  *Id.* at 11-12.

Jones sought review of the ALJ's decision in the United States District Court.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  He argued that, in failing to adhere to Dr. Sardana's determination that he could not sit for more than four hours, the ALJ violated the "treating physician rule," which obligated the judge to explain his reasons for rejecting Sardana's opinion.  *Jones v. Astrue*, 654 F. Supp. 2d 37, 41-42 (D.D.C. 2009). The court was unpersuaded, finding that "[t]here is nothing in Dr. Sardana's report or elsewhere in the medical record that supports his opinion that Mr. Jones could only sit for four hours in an eight hour work day."  *Id.* at 42.  Accordingly, the court granted the government's motion for judgment of affirmance.  *Id.*

While Jones was pursuing his district court litigation against the SSA, he was also filing complaints against Dr. Lopez -- the doctor whom the SSA had engaged to examine him during the pendency of his disability claim.  Jones complained about Lopez to the District of Columbia Board of Medicine and, in July 2008, received a letter stating that the Board had "determined that a violation of the Health Occupations Revision Act did occur that would warrant disciplinary action."  Letter from Jacqueline A. Watson, Executive Dir., D.C. Bd. of Med., to Melvin Jones (Feb. 12, 2010) (reproduced at Amicus Br. app. B).  Jones also filed a complaint in the Superior Court of the District of Columbia, alleging that Dr. Lopez's report constituted fraudulent misrepresentation because he had performed only a cursory examination and used no diagnostic tools to arrive at his medical conclusions.  Compl. ¶ 9, *Jones v. Lopez*, No. 2009 CA 233 (D.C. Sup. Ct. Nov. 13, 2009).  The judge in that case determined that Lopez's report did contain "a false representation of material fact" regarding Jones's physical condition, but ultimately dismissed the complaint because Jones

failed to show, by "clear, convincing, and unequivocal evidence," that Lopez made the false statement "knowingly" or "recklessly."  Sup. Ct. Tr. 245-49, *Jones v. Lopez*, No. 2009 CA 233 (D.C. Sup. Ct., Sept. 10, 2010) (appended to Appellant's pro se brief).

On November 30, 2009, acting pro se, Jones filed a timely appeal from the district court's judgment.  In addition to challenging that judgment, Jones proffered, as new evidence, the letter from the Board of Medicine and the transcript of the Superior Court proceeding.  A special panel of this court appointed amicus curiae to present arguments in support of Jones' position.  We review those arguments below.

II

Sentence four of 42 U.S.C. § 405(g) grants the district court power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  In reviewing an SSA decision, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  *Id*. Accordingly, the "Commissioner's ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards." *Butler*, 353 F.3d 992, 999 (D.C. Cir. 2004).  On appeal, this court reviews the district court's judgment of affirmance de novo, "as if the agency's decision 'had been appealed to this court directly.'" *Gerber v. Norton*, 294 F.3d 173, 178 (D.C. Cir. 2002) (quoting *Dr. Pepper/Seven-Up Cos. v. FTC*, 991 F.2d 859, 862 (D.C. Cir. 1993)); *see Igonia v. Califano*, 568 F.2d 1383, 1387 (D.C. Cir. 1977).

Amicus contends that the Commissioner did not "appl[y] the relevant legal standards," *Butler*, 353 F.3d at 999, because he transgressed the "treating physician rule" by rejecting the opinion of Jones' treating physician without explanation. As this court noted in *Butler*: "'Because a claimant's treating physicians have great familiarity with [his] condition, their reports must be accorded substantial weight.' . . . We thus require an ALJ 'who rejects the opinion of a treating physician [to] explain his reasons for doing so.'" *Id.* at 1003 (quoting *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993)); *see* 20 C.F.R. § 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . . We will always give good reasons in our notice of . . . decision for the weight we give your treating source's opinion.").

It is clear that the ALJ did reject the opinion of Jones' treating physician. Dr. Sardana concluded that Jones could sit no more than four hours in an eight-hour day. The ALJ, by contrast, concluded that Jones could sit for six hours and, as a consequence, was able to engage in sedentary work. It is also clear that the ALJ did not, as required by the treating physician rule, explain his reasons for rejecting Dr. Sardana's opinion. He did say that "Dr. Sardana's report provides a basis for the finding of some limitations related to back pain, respiratory, and cardiovascular problems, but not below the sedentary level." ALJ Op. at 9. But he did not say *why* that was so. This kind of "bare statement," sans any explanation, violates the treating physician rule. *Butler*, 353 F.3d at 1003; *Simms v. Sullivan*, 877 F.2d 1047, 1052-53 (D.C. Cir. 1989).

The government disputes this conclusion on three grounds.

First, the government contends it is unfair to characterize the ALJ as "rejecting" Sardana's opinion because the judge did not reject the doctor's entire report, instead agreeing that it "provides a basis for the finding of some limitations." Amicus, the government charges, does not "acknowledge the difference between an ALJ *weighing* an opinion versus *rejecting* an opinion." Gov't Br. 15 (emphasis added).

This is just word play. Although the ALJ may have accepted some of Sardana's conclusions, the government does not dispute that the ALJ rejected Sardana's opinion that Jones could only sit for four hours in a workday, and instead found that he could sit for at least six. *Id.* at 21; *see* ALJ Op. at 5-6. Moreover, the government acknowledges that "this is a significant difference" because "a finding that Jones could only sit for four hours in a work day would require a finding of inability to perform sedentary work," contrary to the finding of the ALJ. Gov't Br. 21. Hence, whether one calls what the ALJ did "rejecting" or "weighing," the treating physician rule requires an explanation for his disagreement with Dr. Sardana's opinion. *See Butler*, 353 F.3d at 998, 1000-03 (finding the treating physician rule violated where the ALJ rejected the doctor's opinion on the critical issue of whether the claimant could stoop, even though he credited other findings); 20 C.F.R. § 416.927(d)(2) (stating that, when a treating physician's opinion is not given controlling weight, the SSA "*will always give good reasons . . . for the weight . . . give[n] to [the] treating source's opinion*" (emphasis added)).

Second, the government urges us to affirm the ALJ on the ground offered by the district court: that "nothing in Dr. Sardana's report or elsewhere in the medical record . . . supports his opinion that Mr. Jones could only sit for four hours in an eight hour work day." *Jones*, 654 F. Supp. 2d at 42. The amicus vigorously disputes this claim on the merits. For our purposes,

however, it is sufficient that the ALJ did not say this and certainly did not explain it. The treating physician rule requires an explanation by the SSA, not the court. *See Butler*, 353 F.3d at 1002; *cf. SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] simple but fundamental rule of administrative law . . . is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

Finally, the government urges us to affirm the ALJ on the ground that the record contained medical opinions supporting the ALJ's view that Jones could sit for at least six hours, and thus contradicting Sardana's opinion that he could not. As the government points out, Drs. Kumar and Srinivas both opined that Jones was capable of sitting for six hours. But again, the ALJ did not cite those opinions -- or explain why he rejected the opinion of Jones' treating physician in favor of the views of two doctors who did not personally examine Jones. *See* Gov't Br. 5 (stating that Drs. Kumar and Srinivas "reviewed Jones's medical records"); Oral Arg. Recording 19:25-19:33 (acknowledgment by government counsel that Kumar did not examine Jones). To the contrary, the ALJ's only reference to the reports of those doctors was to state that he *disagreed* with their opinions that Jones was capable of "light" (rather than only sedentary) work. ALJ Op. at 9 (referencing Exhibits 8F and 15F).

Citing *Williams v. Shalala*, the government maintains that it is "'of no moment' that the ALJ did not expressly state his reason for not applying the treating physician rule because he noted the contradictory evidence in the record." Gov't Br. 23 (quoting *Williams*, 997 F.2d at 1499). In *Butler*, the government made the same appeal to *Williams*, and we rejected it for the same reason we do today: the ALJ did *not* "'note[] the contradictory evidence in the record,'" *Butler*, 353 F.3d at 1002

(quoting *Williams*, 997 F.2d at 1499). As we said in *Butler*, "[t]his case is not analogous to *Williams* . . . because the ALJ here did *not* acknowledge the contradictory evidence in the record [that] 'supplie[d] the reason' for rejecting the treating physician's opinion." *Id.* (quoting *Williams*, 997 F.2d at 1499). Indeed, as the government conceded at oral argument, the ALJ cited no evidence contradicting Dr. Sardana's finding that Jones could sit for only four hours per day. *See* Oral Arg. Recording 19:07.

Because the ALJ failed to explain his reason for rejecting Dr. Sardana's opinion regarding Jones' capacity to sit, his decision cannot survive review. *Cf. Simms*, 877 F.2d at 1052-53 (reversing the SSA's denial of an application for disability benefits because the ALJ "offered no reason for crediting the consulting physicians over" the treating physician). We will therefore direct a remand pursuant to sentence four of § 405(g). "[U]pon remand, 'the ALJ should explain what weight he attaches to [the treating physician's] conclusions, or if he attaches none, his reason therefor." *Butler*, 353 F.3d at 1003 (quoting *Simms*, 877 F.2d at 1053).[1]

_____

[1]Amicus also contends that the ALJ did not properly communicate the full scope of Jones' impairments to the vocational expert, who opined -- with respect to the fifth step of the disability analysis -- that a person with the impairments described by the ALJ could meet the demands of other available jobs in the national economy. Specifically, amicus argues that the ALJ failed to include drowsiness caused by pain medication in the hypothetical he put to the expert. *See Simms*, 877 F.2d at 1050 ("Should the ALJ look to the opinion of a vocational expert in determining the claimant's ability to perform 'other work' than he has done before, the ALJ must accurately describe the claimant's physical impairments in any question posed to the expert."). On this point, however, we agree with the district court that the ALJ sufficiently communicated Jones' impairments to the expert, including his medicine-induced drowsiness.

12

III

Amicus contends that we should also remand this case to the SSA pursuant to sentence six of 42 U.S.C. § 405(g), which states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing [1] that there is new evidence [2] which is material and [3] that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Amicus argues that the letter from the District of Columbia Board of Medicine, responding to Jones' complaint regarding Dr. Lopez's examination, constitutes such "additional evidence." The letter states: "The Board has determined that a violation of the Health Occupation Revision Act did occur that would warrant disciplinary action." Jones, arguing pro se, contends that the transcript of the Superior Court proceedings constitutes such additional evidence as well. That transcript records the following judicial finding regarding Dr. Lopez's report on Jones' condition: "[T]he court finds that there was a false representation of material fact. Plaintiff satisfies [this] by clear and convincing evidence." Sup. Ct. Tr. 245. We agree with both amicus and Jones.[2]

_____

*See* Hr'g Tr. at 31 (asking the expert to consider a claimant who, due to "fatigue" and "the effects of medication," could not be expected to "concentrate, maintain attention for extended periods, [or] keep up with the pace").

[2]As we recently noted in (*Kevin*) *Jones v. Astrue*, --- F.3d ----, 2011 WL 2652393 (D.C. Cir. July 8, 2011), three circuits have held that a court ordering a remand under sentence four of § 405(g) -- as we do in Part II above -- may also order the Commissioner to consider additional evidence even if the requirements of sentence six are not met. *Id.* at *3. We did not need to decide the issue to resolve that case, and we do not need to do so here. Because we conclude that the evidence proffered by amicus and Jones satisfies the requirements of

The first and third requirements for a sentence-six remand are satisfied when there is new "evidence not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). In this case, Jones received the letter from the Board of Medicine in February 2010, nearly two years after the ALJ issued his decision. Similarly, the Superior Court transcript records proceedings that did not take place until September 2010. Accordingly, neither document was available, or even in existence, at the time of the ALJ hearing, and there was thus good cause for Jones' failure to incorporate that evidence into the record of the disability proceeding. *See Bauzo v. Bowen*, 803 F.2d 917, 926 (7th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 878-79 (11th Cir. 1986).[3]

The government argues that the Board of Medicine's letter nonetheless fails to satisfy sentence six because, "[a]lthough the date of the . . . letter makes it seem new, the underlying content of the complaint is not new." Gov't Br. 32. Jones, the Commissioner points out, "previously contended that Dr. Lopez . . . provided a cursory examination and that his report relayed

---

sentence six, we need not decide whether we could also order an evidentiary remand under sentence four.

[3]The letter and the transcript were likewise unavailable during the pendency of Jones' district court case, which concluded with the issuance of the court's judgment in September 2009. The district court thus had no occasion to consider that evidence. Because "our review functions are as broad as those that may be performed by the district court," we may determine for ourselves whether the evidence satisfies the requirements of § 405(g)'s sixth sentence. *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985); *see Goerg v. Schweiker*, 643 F.2d 582, 584 (9th Cir. 1981) (concluding that, under similar circumstances, "no useful purpose would be served by" returning the case to the district court to rule on the sentence-six issue).

some aspects of the examination that Jones could not have physically performed." *Id.* But sentence six requires only that there be new *evidence*, not that there be an entirely new allegation. At the time of the ALJ hearing, Jones could only allege that Lopez's examination and report were flawed. Now, he can point to a letter from the Board of Medicine validating his complaint, as well as a judicial determination that Dr. Lopez's report contained a false representation. These pieces of evidence are certainly "new" within the meaning of § 405(g), as neither existed at the time of the administrative proceeding. *Cf. Caulder*, 791 F.2d at 877-79 (remanding for consideration of new "objective" evidence of a claimant's medical condition, notwithstanding that the claimant had complained of the problem before the ALJ).

The government also argues that the evidence is not "material" within the meaning of § 405(g). In order to satisfy the materiality requirement, the claimant must show that the evidence "might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *see Finkelstein*, 496 U.S. at 626. The government maintains that the evidence would not have altered the ALJ's decision because neither the letter nor the court's determination undermines the credibility of Dr. Lopez's report. With respect to the Board's letter, the government insists that it "does not mean what it says." Oral Arg. Recording 21:42. While conceding that the letter appears "fairly damning," the government argues that it was merely "inartfully worded." Oral Arg. Recording 22:00-22:10. Citing an email that government counsel solicited from an attorney for the Board, the government insists that "there has been no finding of misconduct" against Dr. Lopez. Oral Arg. Recording 22:10-22:32. As for the Superior Court transcript, the government notes that the Superior Court judge ultimately dismissed the proceeding because he found insufficient evidence that Dr. Lopez made a false statement knowingly or recklessly.

The government misconstrues both pieces of evidence. The email from counsel for the Board of Medicine does *not* say that the Board has made no finding of misconduct against Dr. Lopez. It states only that "[a]t [t]his point no sanctions have been imposed." Gov't Br. Ex. A. And the Superior Court judge plainly found -- by "clear and convincing evidence" -- that Dr. Lopez did make "a false representation of material fact" in his medical report concerning Jones. Sup. Ct. Tr. 245. Whether the doctor did so knowingly or recklessly, while material to Jones' Superior Court suit for misrepresentation, is immaterial to Jones' claim here that the ALJ should not have given weight to Lopez's opinion.

Since both the letter and the transcript undermine the credibility of Dr. Lopez's report, both pieces of evidence "might have changed the outcome of the prior proceeding." *Melkonyan*, 501 U.S. at 98. Although the government correctly observes that the ALJ did not rely *exclusively* on Dr. Lopez's report, it is apparent that Lopez's conclusion that Jones was only mildly impaired did substantially inform the ALJ's opinion. The ALJ stressed Lopez's "opin[ion] that the claimant had full ability to use his upper and lower extremities regarding work-related activities." ALJ Op. at 8. Indeed, the judge recounted Dr. Lopez's findings in greater detail than those of any other physician including Dr. Sardana, the treating physician. Accordingly, evidence that Lopez's conduct in the course of examining Jones "would warrant disciplinary action," Bd. Med. Letter, and that his report on Jones' physical condition contained "a false representation of material fact," Sup. Ct. Tr. 245, might have prompted the ALJ to assign less weight to Lopez's opinion and thus to reach a different result. We will therefore direct a remand to the Commissioner because the additional evidence proffered by amicus and Jones satisfies the requirements of sentence six of § 405(g). *See Jackson v. Chater*, 99 F.3d 1086, 1089-90, 1097 (11th Cir. 1996).

16

IV

For the foregoing reasons, we reverse the judgment of the district court and remand the case to that court with instructions to remand to the Commissioner for further proceedings consistent with this opinion.

*So ordered.*